**IN THE UNITED STATES DISTRICT COURT FOR THE**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| DAVID MADDOX,<br>Plaintiff,<br>v.<br>SERGEANT LADD, et al.,<br>Defendants. | NO. 1:07-cv-01227 OWW GSA PC<br>FINDINGS AND RECOMMENDATION RE DEFENDANTS' MOTION FOR SUMMARY JUDGMENT<br>(ECF No. 30)<br>OBJECTIONS DUE IN THIRTY DAYS |

Plaintiff is a state prisoner proceeding pro se in this civil rights action. The matter was referred to a United States Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 302. Pending before the Court is Defendants' motion for summary judgment. Plaintiff has opposed the motion.[1]

## I. Procedural History

This action proceeds on the original complaint. Plaintiff, an inmate in the custody of the California Department of Corrections and Rehabilitation (CDCR) at Pleasant Valley State Prison, brings this action against defendant correctional officials employed by the CDCR at Pleasant Valley. The complaint names as defendants the following individuals: Warden James Yates;

[1] On September 24, 2009, the Court issued and sent to Plaintiff the summary judgment notice required by Rand v. Rowland, 154 F.3d 952 (9th Cir. 1998), and Klingele v. Eikenberry, 849 F.2d 409 (9th Cir. 1988). (ECF No. 17.)

John Doe Sergeant; Correctional Officer (C/O) A. Battle; C/O C. Vang. On August 6, 2009, an order was entered, advising Plaintiff that the complaint stated a claim against Defendants Battle, Doe and Vang for excessive force, but failed to state any other cognizable claims. Specifically, Plaintiff failed to state a claim for a violation of the Due Process Clause of the Fourteenth Amendment, and supervisory liability claims against Warden Yates. Plaintiff also failed to state a claim on his allegations of conspiracy. Plaintiff was directed to either file an amended complaint or notify the Court of his willingness to proceed only on the claims found to be cognizable in the original complaint. On September 4, 2009, Plaintiff filed a notice, informing the Court that he intended to proceed against Defendants Battle, Vang and Ladd on his excessive force claim.[2]

On November 10, 2009, the District Court adopted the findings and recommendations of the Magistrate Judge, dismissing Defendants Yates, as well as Plaintiff's Due Process and conspiracy claims. Service was ordered on Defendants Ladd, Battle, and Vang. Defendants filed an answer on January 26, 2010. On December 2, 2010, all three Defendants filed the motion for summary judgment that is now before the Court. Plaintiff filed his opposition on December 21, 2010, and Defendants filed a reply on December 27, 2010.

## II. <u>Summary of Complaint</u>

Plaintiff alleges that on August 18, 2005, he got into a heated argument with another inmate. Plaintiff was pushed by the other inmate and fell. Defendant Vang activated the housing unit alarm and two correctional officers, one of whom was Defendant Battle, ran over to Plaintiff. Plaintiff was handcuffed by one of the officers, while Defendant Battle stood by Plaintiff with a can of pepper spray. Plaintiff tried to explain the situation but Defendant Battle warned him to shut up. Plaintiff refused, and then said, "What are you going to do spray me for talking [?]" (Compl. ¶ 13.) In response, Defendant Battle pepper sprayed Plaintiff.

---

[2] In the September 4, 2009, notice, he indicated that the identity of Defendant Sergeant Doe is Sergeant Ladd.

Plaintiff was then escorted to a clinic where Defendant Ladd told him that if he would drop the pepper spray incident, he would not receive a disciplinary write up. Plaintiff refused, and Defendant Ladd had Plaintiff confined to a cell for four hours with pepper spray still covering his entire face and upper body.

When Plaintiff was allowed to return to his housing unit, he asked Defendant Vang for a shower to wash off the pepper spray, but Defendant Vang refused to allow him to take a shower for three hours.

Plaintiff was issued a CDC Form 115 (Rules Violation Report) for the incident, but it was dismissed at the disciplinary hearing because Plaintiff had been the victim in the incident, and was cleared of any misconduct.

## III. Summary Judgment

Summary judgment is appropriate when it is demonstrated that there exists no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). Under summary judgment practice, the moving party

> [a]lways bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the denials of its pleadings, but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. Rule 56(e); Matsushita, 475 U.S. at 586 n.11. The opposing party must demonstrate that the fact in

contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, Anderson, 477 U.S. at 248; Nidds v. Schindler Elevator Corp., 113 F.3d 912, 916 (9th Cir. 1996), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party, Matsushita, 475 U.S. at 588; County of Tuolumne v. Sonora Community Hosp., 263 F.3d 1148, 1154 (9th Cir. 2001).

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." Giles v. Gen. Motors Acceptance Corp., 494 F.3d 865, 872 (9th Cir. 2007). Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963 amendments).

In resolving the summary judgment motion, the court examines the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any. Rule 56(c). The evidence of the opposing party is to be believed, Anderson, 477 U.S. at 255, and all reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party, Matsushita, 475 U.S. at 587 (citing United States v. Diebold, Inc., 369 U.S. 654, 655 (1962) (per curiam)). Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir. 1987).

Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts. Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Matsushita, 475 U.S. at 587 (citation omitted).

///

**A. Excessive Force**

The unnecessary and wanton infliction of pain violates the Cruel and Unusual Punishments Clause of the Eight Amendment. Hudson v. McMillian, 503 U.S. 1, 5 (1992)(citations omitted). When a prison security measure is undertaken in response to an incident, the question of whether the measure taken inflicted unnecessary and wanton pain and suffering depends on "whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm." Id. at 6.

The infliction of pain in the course of a prison security measure "does not amount to cruel and unusual punishment simply because it may appear in retrospect that the degree of force authorized or applied was unreasonable, and hence unnecessary." Whitley v. Albers, 475 U.S. 312, 319 (1986); see also Hudson, 503 U.S. at 1. Prison administrators "should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security." Whitley, 475 U.S. at 321-322 (quoting Bell v. Wolfish, 441 U.S. 520, 547 (1970)).

Moreover, not "every malevolent touch by a prison guard gives rise to a federal cause of action," Hudson, 503 U.S. at 9. "The Eighth Amendment's prohibition of cruel and unusual punishments necessarily excludes from constitutional recognition de minimis uses of physical force, provided that the use of force is not of a sort 'repugnant to the conscience of mankind.'" Id. at 9-10 (internal quotations marks and citations omitted). Although de minimis uses of force do not violate the Constitution, the malicious and sadistic use of force to caused harm always violates the Eighth Amendment. Id.; see also Oliver v. Keller, 289 F.3d 623, 628 (9th Cir. 2002)(Eighth Amendment excessive force standard examines de minimis uses of force, not de minimis injuries)).

Factors such as the need for the application of force, the relationship between the need and amount of force that was used, and the extent of injury inflicted are relevant to the ultimate determination as to whether force used by prison personnel was excessive. From these factors,

inferences may be drawn as to whether the use of force could plausibly have been thought necessary, or instead evinced such wantonness with respect to the unjustified infliction of harm as is tantamount to a knowing willingness that it occur. "Equally relevant are such factors as the extent of the threat to the safety of staff and inmates, as reasonably perceived by the responsible officials on the basis of facts known to them, and any efforts made to temper the severity of a forceful response." Whitley, 475 U.S. at 321.

**IV. Defendants' Motion**

In order to meet their burden on summary judgment, Defendants must come forward with evidence that establishes the lack of existence of a triable issue of fact. Defendants' evidence must establish, without dispute, that their use of force was applied in a good faith effort to restore or maintain prison discipline, and not sadistically or maliciously.

Defendants support their motion with the declarations of Defendant Ladd, Defendant Vang, Defendant Battle and Medical Technical Assistant (MTA) Carr. Attached as exhibits to Defendants' declarations are copies of the incident report regarding the event at issue, as well as copies of portions of Plaintiff's medical record.

**A. Defendant Ladd**

Defendant Ladd declares that in 2005, he was assigned as the Recreation Yard and Dining Hall Sergeant at Pleasant Valley State Prison. Regarding the incident at issue in this case, Sergeant Ladd declares that "I had no involvement in the use-of-force incident on August 18, 2005 because I worked outside of Building Four. I was not the building's Program Sergeant. I did not work in the medical clinic where Maddox decontaminated himself." (Ladd Decl. ¶ 2.)

The Court finds that Defendant Ladd has come forward with evidence that he was not involved in the alleged use of excessive force, and was not present. Sergeant Ladd's declaration establishes that he had no involvement with the use of force at issue in this lawsuit.

In his opposition, Plaintiff fails to make any reference to Defendant Ladd. The Court has reviewed the verified complaint, Plaintiff's opposition, and exhibits in support of his opposition.

Plaintiff has failed to come forward with any evidence that Defendant Ladd subjected Plaintiff to excessive force. Defendant Ladd's declaration establishes that he was not present during the event at issue. Plaintiff has not come forward with any evidence to the contrary. Judgment should therefore be entered in Defendant Ladd's favor.

**B. <u>Defendant Battle</u>**

Regarding the events at issue, Defendant Battle declares the following.

> On August 18, 2005, I worked as a Floor Officer in Building Four. At approximately 3:20 p.m., I observed inmate Maddox engaged in a heated argument with fellow inmate Lewis in the day room. I yelled at the inmates to stop arguing, but they did not comply.
>
> Lewis pushed Maddox to the ground.
>
> I instructed the inmates to get down on the ground so that they could be restrained and separated.
>
> Maddox attempted to get up and began arguing with me.
>
> I repeatedly commanded him to stay down and I drew my OC pepper-spray canister.
>
> Officer Martinez arrived, stood near Maddox, ordered Maddox to stay down, and told him to put his hands behind his back.
>
> Maddox then swore at Officer Martinez, attempted to get up, and grabbed Maddox's [sic] wooden cane lying next to his right hand.
>
> I perceived that Maddox was attempting to assault Officer Martinez, so I sprayed Maddox once in the face with pepper spray.
>
> Maddox dropped his cane and lay prone on the ground. Correctional staff restrained both inmates and escorted them from the building.

(Battle Decl. ¶¶ 1-12.)

The Court finds that Defendant Battle has met her burden on summary judgment. Defendant Battle's declaration establishes that Plaintiff disobeyed an order to get down, and disobeyed an order to put his hands behind his back. Battle's declaration also establishes that, instead of putting his hands behind his back, Plaintiff reached for a wooden cane. Battle declares

that she sprayed Plaintiff because she perceived that he was attempting to assault Officer Martinez with his cane. Defendant Battle's declaration establishes that she used force in a good faith effort to restore order and discipline, and not sadistically and maliciously for the purpose of harming Plaintiff. Defendant Battle has therefore met her burden on summary judgment.

Plaintiff's complaint, as well as his opposition, is made under penalty of perjury.[3] Plaintiff declares that Defendant Battle applied pepper spray to Plaintiff because Plaintiff would not stop talking. (Compl. ¶¶ 13, 14.) Plaintiff further declares that Defendant Battle's conduct was the cause of disruption in the dayroom. Specifically, Plaintiff declares that the supervising officers that arrived were "taken by surprise" at the amount of pepper spray used as well has how upset the dayroom was. Plaintiff declares that he "was later told and there upon alleges on information or belief, that due to the extremely volatile situation in the unit caused by said defendant's actions, the dayroom was immediately closed and Officer Battle relieved of her post for the rest of the day." (Compl. ¶ 15.)

Federal Rule of Civil Procedure 56(c)(4) requires that affidavits be made on personal knowledge, set forth facts that would be admissible in evidence (i.e., no inadmissible hearsay or opinions), and that show the affiant is competent to testify to the matters stated. "Hearsay evidence in Rule 56 affidavits is entitled to no weight." Schosche Industries Inc. v. Visor Gear Inc., 121 F.3d 675, 681 (9th Cir. 1997). Plaintiff declares that "on information and belief" he was "told" that Battle's motivation for spraying him was the fact that Plaintiff would not stop talking. Although personal knowledge may be inferred from a declarant's position and nature of participation in the matter, Barthelemy v. Air Line Pilots Ass'n, 897 F.2d 999, 1018 (9th Cir. 1990), declarations on "information and belief" are entitled to no weight where the declarant lacks personal knowledge. Argo v. Blue Cross &Blue Shield of Kansas Inc.,452 F.3d 1193 ,

[3] A verified complaint in a pro se civil rights action may constitute an opposing affidavit for purposes of the summary judgment rule, where the complaint is based on an inmate's personal knowledge of admissible evidence, and not merely on the inmate's belief. McElyea v. Babbitt, 833 F.2d 196, 197-98 (9th Cir. 1987) (per curiam); Lew v. Kona Hospital, 754 F.2d 1420, 1423 (9th Cir. 1985); F.R.C.P. 56(e)

1200 (10th Cir. 2006). Plaintiff's declaration does not dispute that he refused to follow orders to stop talking. Plaintiff appears to argue that he has undisputed evidence of Battle's subjective state of mind as to why she sprayed Plaintiff.

Defendant Battle has come forward with evidence that Plaintiff reached for his cane, and that she acted in order to maintain discipline. Her liability, therefore, turns on whether Plaintiff can offer any evidence that he did not offer any resistance or present any threat to officer safety. In his opposition, made under the penalty of perjury, Plaintiff states that he "was so passive that the responding officer Martinez, after correctly assessing the situation put away his baton and asked Plaintiff to cuff-up, which Plaintiff was complying with when Battle excessively sprayed Plaintiff and Officer Martinez." (Opp'n., 2:25-28.) Plaintiff states that he "complied with all verbal commands to get down, stay down and cuff-up." (Id., 4:9-10.) Although Plaintiff does not specifically declare that he did not reach for his cane, his verified opposition establishes that he did not offer resistance. As noted above, the evidence of the opposing party is to be believed, Anderson, 477 U.S. at 255, and all reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party, Matsushita, 475 U.S. at 587. A reasonable inference may be drawn from Plaintiff's opposition that he did not offer resistance, and that he complied with all verbal orders. Summary judgment should therefore be denied as to Defendant Battle.

**C. Defendant Vang**

Plaintiff claims that Defendant Vang, despite Plaintiff's request to take a shower to remove the pepper spray, waited three hours before allowing Plaintiff to take a shower. Plaintiff claims that making him wait three hours to take a shower to remove the pepper spray constituted deliberate indifference within the meaning of the Eighth Amendment.

A prison official's failure to decontaminate a prisoner after exposure to pepper spray may support an Eighth Amendment claim for deliberate indifference to his serious medical needs. Clement v. Gomez, 298 F.3d 898, 905 (9th Cir. 2002). In Clement, prison officials used pepper

spray inside a cell to stop a fight between inmates, and the pepper spray spread into the nearby cells. Id. at 901. Although the inmates in the nearby cells were coughing, gagging and taking turns to go outside for fresh air, four hours passed before the inmates were allowed to shower. Id. The Ninth Circuit affirmed the district court's denial of summary judgment for the officers, stating that "the prisoners may be able to show that the defendants were subjectively aware of the risk of serious injury when they denied showers and medical attention for the inmates for the 4 hour period.

In his complaint, Plaintiff declares that he had pepper spray "over his entire face and upper body." (Compl. ¶ 17.) In his opposition, Plaintiff declares that he was sprayed "in his eyes and face." (Opp'n. 3:18.) Defendant Vang's declaration is submitted in support of defendants' motion. Defendant Vang declares that "Maddox argued with Officer Battle before she sprayed him once with pepper spray." (Vang Decl. ¶ 4.) It is undisputed that Plaintiff was sprayed in the face, and had some exposure to his upper body.

Defendants also submit the declaration of Medical Technical Assistant (MTA) J. Carr, who examined Plaintiff after he was sprayed and placed in a holding cell. MTA Carr examined Plaintiff, noted no injuries, and instructed Plaintiff on self-decontamination. Plaintiff decontaminated himself using water from the sink in the medical clinic's holding cell. (Carr Decl. ¶¶ 3,4.) Defendants' Exhibit C-1 is a copy of CDC Form 7219, Medical Report of Injury or Unusual Occurrence, dated August 18, 2005, the date of the incident at issue. The report indicates that, as to Plaintiff, no injuries were found, Plaintiff was decontaminated, and self-decontamination instructions were given.[4]

Defendant Vang declares that after Plaintiff was sprayed, correctional staff returned Plaintiff to his cell, where he could use the water from his cell's sink to decontaminate himself.

---

[4] Although not submitted as an exhibit by either party, the governing operational procedures are set forth in the Department Operations Manual [DOM], Ch. 5, Art. 2, § 51020.15.3. Inmates affected by pepper spray should be given access to either fresh air or water. The pertinent portion of DOM policy provides that "decontamination from OC [oleoresin capsicum] may be accomplished by exposing the individual to fresh moving air, or flushing the affected body area with cool water, e.g., shower sink, or wet cloths." Id., § 501020.15.3.

The escort officers did not inform Vang that Plaintiff had any difficulty decontaminating himself in the medical clinic. Although Vang did not recall Plaintiff asking him to release him from his cell to take a shower, he declares that even if Plaintiff had made the request, Vang was not authorized to release Plaintiff to shower unless he received a direct order from the Program Sergeant. He did not receive any such order. (Vang. Decl. ¶¶ 6,7.)

Plaintiff's claim against Defendant Vang is that he was not allowed to shower for three hours. As noted above, however, Vang's liability turns on whether he knowingly subjected Plaintiff to a serious risk to his safety. The undisputed evidence establishes that Plaintiff was sprayed once in the face with pepper spray, with some exposure to his upper body. Plaintiff was allowed (and instructed to) decontaminate himself using the sink in the holding cell and the cell in his housing unit. Defendants' Exhibit C-1 establishes that, in addition to being instructed on self-decontamination procedures, Plaintiff did indeed decontaminate himself in the medical holding cell. That Plaintiff was not allowed to take a shower for three hours does not subject Vang to liability. There is no evidence that Plaintiff was significantly exposed to pepper spray other than his face and upper body, or that he was not allowed to decontaminate himself. Plaintiff does not dispute Defendants' evidence that Plaintiff was sprayed once in the face. The evidence indicates, at most, incidental exposure to Plaintiff's upper body. There is no constitutional requirement that Plaintiff be allowed to take a shower, absent evidence that exposure to pepper spray over other parts of his body warranted it. In order to hold Defendant Vang liable under the Eighth Amendment, Plaintiff must come forward with evidence that he knew of a serious risk to Plaintiff's health or safety, and acted with deliberate indifference to that risk, causing injury to Plaintiff. There is no such evidence in this case. Judgment should therefore be entered in favor of Defendant Vang.

Accordingly, IT IS HEREBY RECOMMENDED that:

1. Defendants' motion for summary judgment be granted in part and denied in part.
2. Judgment be entered in favor of Defendants Ladd and Vang and against Plaintiff.

3. Summary judgment be denied as to Defendant Ladd.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(1). Within thirty days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any reply to the objections shall be served and filed within ten days after service of the objections. The parties are advised that failure to file objections within the specified time waives all objections to the judge's findings of fact. See Turner v. Duncan, 158 F.3d 449, 455 (9th Cir. 1998). Failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

**Dated: July 20, 2011**

/s/ **Gary S. Austin**
UNITED STATES MAGISTRATE JUDGE